FILED
JEANNE A. NAUGHTON, CLERK
**May 12, 2017**
United States Bankruptcy Court
Newark, NJ
By: /s/ Juan Filgueiras, Deputy

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| In re:<br>GERTRUDE TATUM,<br><br>Debtor. | Case No.:  15-31925  VFP<br><br>Chapter  13 |

## MEMORANDUM OPINION

**APPEARANCES**

| Herbert B. Raymond, Esq.<br>Kevin deLyon, Esq.<br>Raymond & Raymond<br>7 Glenwood Avenue, Ste. 408<br>East Orange, NJ  07017<br>Attorneys for Debtor | James Kilduff, Esq.<br>Maselli Warren, PC<br>600 Alexander Road, Ste. 3-4A<br>Princeton, NJ  08540<br>Attorneys for Unity Bank | Joseph D. Petrolino, Jr., Esq.<br>30 Two Bridges Road, Ste. 330<br>Fairfield, NJ  07004<br>Attorney for Chapter 13 Standing<br>Trustee |

**VINCENT F. PAPALIA, Bankruptcy Judge**

### I. INTRODUCTION

This matter is before the Court on the fee application of Unity Bank (the "Bank"). The Bank is the holder of a first mortgage (the "Mortgage") on the real property and improvements currently known as 424 Georges Place, Roselle, New Jersey (the "Property"). The Property is owned by the now-deceased debtor, Gertrude Tatum (the "Debtor"). The Debtor's case is being prosecuted by the Debtor's estate, whose executrix is Shirley Vaughn (née Tatum), the Debtor's daughter.

According to the Debtor's schedules, the Property has a value of $320,000, which has not been challenged by any party. Also according to the Debtor's schedules, the Bank was owed $48,396.31 at the time the Debtor filed her petition on November 21, 2015, a debt which obviously did not (and could not) include any fees or expenses owed to the Bank. The Bank filed an amended proof of claim for $63,744.53, which includes the fees and expenses that are the subject of this fee application. Using either amount, there is no dispute that the Bank is an oversecured creditor. As an oversecured creditor, the Bank is permitted to recover interest on its claim, and "any *reasonable* fees, costs or charges provided for under the agreement or State statute under which such claims arose." 11 U.S.C. § 506(b) (emphasis supplied).

The Bank's fee application initially sought recovery of $15,143 in fees and $503.83 in expenses, for a total of $15,646.83 [See Dkt. No. 68]. In a subsequent pleading, however, the Bank indicated it was seeking a total of $16,318.33, broken down as follows:

| | |
|---|---|
| Fees and expenses during 180 days prior to filing of Notice of Post-Petition Mortgage Fees, etc. (the "Notice"), etc.: | $10,128.05 |
| Fees and expenses incurred more than 180 days prior to the Notice: | 6,190.28 |
| TOTAL: | $16,318.33 |

See Bank Reply Cert. at ¶¶ 8-9 [Dkt. No. 72].

This breakdown is significant as it at least implicitly acknowledges the applicability and potential effect of FED. R. BANKR. P. 3002.1, which is a primary basis of Debtor's opposition. Debtor also objects to the reasonableness of the fees sought by the Bank generally as not being allowed under the loan documents and disproportionate to the amount owed and specifically as being excessive, duplicative and/or unnecessary. Those objections and the Bank's responses are addressed below.

## A. FED. R. BANKR. P. 3002.1

FED. R. BANKR. P. 3002.1 was added by amendment in 2011. Among other things, subsection (c) of the Rule requires the secured creditor to file and serve on debtor, debtor's counsel and the Chapter 13 Trustee a notice itemizing all fees and expenses incurred after the bankruptcy case was filed and that the creditor asserts are recoverable against the debtor or debtor's principal residence. The notice must be served within 180 days after the date the fees, expenses or other charges are incurred. FED. R. BANKR. P. 3002.1(c). The Bank filed this case and served its Notice on April 24, 2017 with respect to the fees and expenses it incurred during the 180-day period from October 26, 2016 to April 24, 2017, as required by Rule 3002.1(c).

The Advisory Committee Note indicates that the purpose of the amendment was to assist the parties (and particularly the debtor and trustee) in the application and utilization of 11 U.S.C. § 1322(b)(5) (which provides for cure of defaults and maintenance of current mortgage payments):

> [The Rule] is added to aid in the implementation of § 1322 (b)(5), which permits a chapter 13 debtor to cure a default and maintain payments on a home mortgage over the course of the debtor's plan. . . . In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any pre-petition arrearage, see Rule 3001(c)(2), and the amount of the postpetition payment obligations. *If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust post-petition mortgage payments to cover any undisputed claimed adjustment.*

As quoted in *In re Gravel*, 556 B.R. 561, 569 (Bankr. D. Vt. 2016) (emphasis supplied).

Interpreting this amendment, the Bankruptcy Court in *Gravel* noted as follows:

> Bankruptcy Rule 3002.1 (the "Rule") was promulgated in 2011, in response to a growing problem that had arisen in Chapter 13 cases throughout the country: debtors who had successfully completed their Chapter 13 plans, and paid all of their mortgage arrears and post-petition installment payments, would find themselves in renewed foreclosure proceedings due to undisclosed and unpaid post-petition charges and fees—a result clearly at odds with a debtor's right to a fresh start. To promote further transparency and more emphatically safeguard debtors' fresh starts, the Rule requires the holder of a claim secured by a Chapter 13 debtor's principal residence to file a detailed notice setting forth all post-petition fees, expenses, and charges it seeks to recover from the debtor . . .

*In re Gravel*, 556 B.R. at 568.

Subsection (i) of the Rule provides for the possible effects of the creditor's failure to provide required information:

> If the holder of a claim fails to provide any information as required by subdivision (b), (c) or (g) of this rule, the court may, after notice and a hearing, take either or both of the following actions:
>
> (1) *preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case*, unless the court determines that the failure was substantially justified or is harmless; or
>
> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused the failure.

FED. R. BANKR. P. 3002.1(i) (emphasis supplied). Thus, one potential sanction is the exclusion of evidence relating to fees and expenses outside the 180-day period and the resulting denial of those fees. *See In re Owens*, 2014 WL 184781 (Bankr. W.D.N.C. Jan. 15, 2014, cited with approval in *In re Gravel*, 556 B.R. at 571); 9 *Collier on Bankruptcy*, ¶ 3002.1.03[8] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (under this Rule, creditor may be precluded from introducing omitted evidence, such as fees and expenses, outside the 180-day period).

Here, there is no question that $6,190.28 of the fees and expenses that the Bank seeks to recover were incurred outside the 180-day period, as certified by the Bank.[1] Thus, under Rule 3002.1(i), the Court may exclude the fees outside the 180-day period, unless their omission was substantially justified or harmless. The Bank argues that its failure to provide timely notice as to the additional fees was harmless, as "[w]hether asserted now, or at a prior date, the costs and fees expended by the Bank would not have a differential impact on the Debtor." Reply Cert. at ¶ 11. The Bank also argues that the Debtor was on notice of the additional fees, as the Bank's proofs of claim and other documents generally noted the potential accrual of fees and expenses. The Court is not persuaded by either argument.

The Debtor vigorously disputes that the omission of the additional fees was harmless. In fact, the Debtor argues that allowance of all or even a substantial part of the more than $16,000 in fees and expenses sought by the Bank would render the Debtor's plan unconfirmable. Since the payment of an additional $16,000 over the remaining 44 months of the Plan would add approximately $364 per month to the Debtor's monthly plan payments, which already require the support of various family members, the Court finds that the omission of the additional $6,000 in fees from the notice (or $136.36 per month) is not harmless. Instead, it is potentially fatal to the Debtor's plan. Accordingly, the Court finds that the sanction of disallowing fees and expenses incurred in this case outside the 180-day period is "entirely aligned with the history and purpose of Rule 3002.1." *In re Gravel*, 556 B.R. at 571.

Similarly, the Court finds that any general statements by the Bank as to the accrual of fees and expenses without specifying amounts, dates and other details are insufficient to satisfy Rule 3002.1's requirements and, more significantly, its substance and intent. Those general statements

---

[1] Nor is there any dispute that $10,128.05 of the fees and expenses were incurred within the 180-day notice period. The Debtor challenges only the allowability and reasonableness of these fees and expenses.

simply do not provide the Debtor and other interested parties with the specific information they need to know as to the amount of the fees sought to be recovered that would, in turn, allow them to determine how the Debtor's plan is affected, whether the Debtor's plan is confirmable and prevent unexpected surprises, as would be the case here if the additional fees were allowed.

Thus, for all these reasons, the fees and expenses incurred by the Bank in connection with this matter outside the 180-day period prescribed by Rule 3002.1(c) in the amount of $6,190.28 are not being considered and are disallowed pursuant to Rule 3002.1(i).  The remaining fees and expenses sought by the Bank, in the amount of $10,128.05, are covered by the Notice and allowable under 11 U.S.C. § 506(b) and Rule 3002, but only to the extent they are provided for under the applicable loan documents and reasonable as is discussed in more detail below.

### B. The Allowance of Fees and Expenses Under the Loan Documents.

The Debtor argues that the Bank is not entitled to its fees and expenses under its loan documents with the Debtor relying on paragraph 26(D) of the Revolving Credit Account Agreement (the "Credit Agreement") between the parties [Dkt. No. 71].  That paragraph provides as follows:

> (D) Collection Costs.  We may hire or pay someone else to help collect this Agreement *if you do not pay*.  You will pay us that amount.  This includes, subject to any limits under applicable law, our reasonable attorneys' fees and our legal expenses, Whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

See ¶ 26(D) of Credit Agreement, Ex. B to Bank Certification in Support of Fee Application [Dkt. 68-1] (emphasis supplied).

Based on the highlighted language, the Debtor argues that the Bank's right to fees and expenses is limited to actions to collect the amounts due to it *only* if the Debtor "do[es] not pay." The Debtor goes on to argue that since the Debtor was at all times current under the loan and the

6

primary default alleged by the Bank -- the Debtor's passing -- was not a payment default and not a default in any event because the Bank was not permitted under federal law to declare a default on that basis. The Bank disagrees, relying on the payment defaults described below and the attorneys' fee provision in paragraph 25(H) of the Mortgage, as well as paragraph 26(D) of the Credit Agreement.

As is noted by both parties, paragraph 25(H) of the Mortgage separately provides for the Bank's recovery of attorneys' fees and expenses upon a default, stating as follows:

> (H)  Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Security Instrument, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. *Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Sums Secured payable on demand and shall bear Interest at the Credit Agreement* rate from the date of the expenditure until repaid. *Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction*), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. I also will pay any court costs, in addition to all other sums provided by law. (Emphasis supplied).

The Debtor argues that the Court should disregard this provision and base its decision on the more limited language of paragraph 26(D) of the Credit Agreement. In contrast, the Bank cites both provisions as a basis for recovery. These arguments are addressed below.

1. **The Payment Defaults**.

The Debtor first argues that she was at all times current and not in default under the Mortgage or Credit Agreement and therefore the Bank is not entitled to any "collection costs" under paragraph 26(D). The Bank disagrees and asserts that there was a tax lien on the Property and arrearages on the Mortgage at the time of the Debtor's filing, resulting in defaults under the Mortgage, and cites to the Debtor's own pleadings for support.

In fact, the last three plans filed by the Debtor all indicate that there was in excess of $15,000 in real estate taxes due at the time of the filing.[2] Further, the last three plans all indicate that $1,866.30 was due under the Credit Agreement and Mortgage at the time of the filing (with the last two plans indicating that the arrearages had been cured). Thus, by the Debtor's own statements to this Court, there were at least two payment-related defaults at the time of the filing, notwithstanding the unsworn statements of Debtor's counsel to the contrary. These defaults entitle the Bank to attorneys' fees and expenses even under Debtor's narrow interpretation of paragraph 26(D) of the Credit Agreement.

2. **The Separate Bases for Recovery Under the Loan Documents.**

The Debtor also argues that the Court should disregard the broader attorneys' fees language of the Mortgage in favor of the more narrow language of the Credit Agreement. This argument fails to consider that the Credit Agreement and Mortgage provide separate grounds for the recovery of those fees, as specifically set forth in paragraph 2 of the Credit Agreement, which states as follows:

> 2.    Promise to Pay.   You promise to pay Unity Bank, or order, the total of all credit advances and FINANCE CHARGES, *together with all*

---

[2] At oral argument, Debtor's counsel asserted that the tax arrearages relate to a different property -- 422 Georges Place in Roselle. However, the last three plans indicate that the arrearages relate to this subject Property, 424 Georges Place.

> *costs and expenses for which you are responsible under this Agreement or under the "Mortgage"* which secures your Credit Line.

Credit Agreement at ¶ (2) (emphasis supplied). Thus, under this language, attorneys' fees and expenses are recoverable under either or both the Credit Agreement and the Mortgage.

By its terms, Section 25(H) of the Mortgage (quoted above) plainly provides for the collection of the Bank's reasonable attorneys' fees and expenses incurred in connection with (among other things): (i) the enforcement of any of its rights under the Mortgage; (ii) any actions that, in Lender's opinion, are necessary for the protection of its interests; and (iii) any bankruptcy proceedings, whether or not any suit or action is pending in any of those instances. Thus, the Mortgage provides a separate basis for the Bank's recovery of its reasonable attorneys' fees and expenses.

Debtor's arguments to the contrary are rejected, as they: (i) ignore the admitted defaults under the Credit Agreement and Mortgage; (ii) would render ineffective the attorneys' fees provision of the Mortgage; (iii) read the quoted language of the Credit Agreement and Mortgage too narrowly; and (iv) do not give any effect to the Lender's assertion of a default based on the Debtor's death. As will be described in more detail below, although the Court ultimately rejected this argument by the Bank, the Court finds that the Bank did not act unreasonably in asserting a default due to the Debtor's passing based upon the plain language of the Credit Agreement (¶ 26(A)) and Mortgage (¶ 24), each of which specifically identifies the Borrower's death as an event of Default.

In sum, the Court finds that the Credit Agreement and Mortgage each separately and independently allow for the collection of the Bank's reasonable attorneys' fees and expenses incurred in connection with the Debtor's bankruptcy proceeding.

**C. The Reasonable and Necessary Requirement.**

The Debtor's next argument is that taken as a whole, the Bank's fees are unreasonable because they amount to 34 percent of the principal amount due (calculating that percentage on the basis of the $15,143 in fees originally claimed by the Bank and a $45,000 principal amount due). The Debtor also challenges many of the specific charges on the grounds that certain of counsel's services were not necessary or successful.

As to the overall amount of Bank's fees, the Court has already limited the Bank's recovery to a maximum of $10,128.05 by excluding the fees and expenses outside the 180-day period set forth in Rule 3002.1(c). As a result, the percentage of the Bank's fees to the amount owed is reduced to about 22.5 percent ($10,128.05 ÷ $45,000). Though admittedly high, the Court does not find that this amount is patently unreasonable or disproportionate to the amount due. Indeed, at least one New Jersey court has found a flat 20 percent collection fee to be reasonable. *Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll*, 44 N.J. 442, 443, 448-49 (1965); *Metric Inv., Inc. v. Kerner*, 145 N.J. Super. 463, 466 (App. Div. 1976). In a much more recent case, the Bankruptcy Court found that a 22.5 percent collection fee charged by the Department of Education on a student loan default was reasonable and enforceable. *In re Kennedy*, 2017 WL 939303 (Bankr. D. Kan. Mar. 3, 2017). Thus, the Court overrules the Debtor's objection based exclusively on the amount of the fees sought as a percentage of the total indebtedness to the Bank.

The Debtor further argues that many of the actions taken by the Bank were unreasonable and/or unnecessary, especially when considered against its substantially oversecured position; i.e., over $200,000 of equity in the Property. The Debtor cites to case law requiring that creditor's fees and actions be reasonable when considered in the context of the Bankruptcy Code's policies and provisions and a similarly situated creditor. *See generally, In re Nicfur-Cruz Realty Corp.,* 50 B.R. 162, 167 (Bankr. S.D.N.Y. 1985); *In re Karin-Marie Lund*, 187 B.R. 245, 250 (Bankr. N.D. Ill.

1995). The Court agrees with these general propositions and will review the remaining fees sought by the Bank and the Debtor's objections with those considerations in mind.

### 1. **The Default Based on Debtor's Passing**.

The Debtor argues that *all* the Bank's fees incurred in asserting a default based on Debtor's death should be disallowed because the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3 (the "Garn-St. Germain Act") overrides this provision, an argument which this Court accepted in overruling the Bank's objection to confirmation on this ground. In other words, Debtor's position is that the Bank should not recover any fees related to this argument because it was an unsuccessful one. However, nothing in the Code, the Rules or the case law requires success on an argument for it to be considered reasonable and compensable.

In this regard, the Court finds that the Bank's initial argument was made in good faith on the basis of the plain language of both the Credit Agreement and Mortgage that specifically provide that the death of the Borrower is an event of default. And while this Court is willing to assume that the Bank was unaware of the Garn-St. Germain Act when it filed its motion to dismiss and therefore allow the fees and expenses up to the filing of that motion,[3] the Court finds that most of the fees and expenses incurred in responding and arguing that the Act did not apply should not be reasonably charged to the Debtor or the estate.

Based on the Court's review, a total of $2,482 in fees were incurred by the Bank from October 28, 2016 to November 3, 2016 in connection with the Bank's continuing objection to confirmation and motion to dismiss based on the death as a default argument. Of this amount, the Court will allow three hours of research at $190 per hour regarding the terms and applicability of the Garn-St. Germain Act and four of the six hours charged for attendance at the confirmation

---

[3] This assumption is based in part on the extensive research conducted by Bank's counsel regarding this issue *after* the Debtor's opposition was received.

11

hearing at $155 per hour (which included other issues) for a total allowance of $1,190 against $2,482 sought. The difference, or $1,292 ($2,482 - $1,190) will be deducted from the Bank's fee award.

### 2. Fees on Fees.

The Bank seeks recovery of fees incurred in preparing its fee application, which the Debtor has not objected to and this Court finds is proper. 11 U.S.C. § 330(a)(6). Thus, fees relating to the preparation of the application through its March 29, 2017 filing will be allowed. However, the Bank's latest submission, on April 24, 2017, indicates that the Bank charged fees on and after April 20, 2017 in responding to the Debtor's objections to its fees; i.e., defending its fees. Although it is difficult to read certain entries, it appears that the Bank's counsel spent .30 hours on April 20, 2017 reviewing the Debtor's objection, which the Court finds reasonable and will be allowed. However, the entries after April 20, 2017 indicate that the Bank's counsel spent (at least) 4.3 hours, or a total of $677, defending its fee application. As is noted by the Debtor, the Supreme Court held in *Baker Botts, LLP v ASARCO, LLC,* 135 S. Ct. 2158, 2167-69 (2015) that "fees on fees," i.e., fees incurred in defending a fee application, are not permitted. Thus, an additional $677 will be disallowed.

### 3. Fees for Attending Hearings.

The Debtor notes that Bank's counsel billed $2,821 to attend four hearings on various matters on this case and asserts that the amount is unreasonable, especially as compared to the charges of Debtor's counsel for similar services under the "no look" fee application. However, the "no look" fee is optional and does not apply to creditors, and is therefore not relevant to this analysis. Further, the first such charge occurred outside the 180-day period and therefore has

already been excluded. The next three charges: 6 hours totaling $930 on November 3, 2016;[4] 3.7 hours for $573.50 on January 5, 2017 and 5 hours for $775 on March 16, 2017 appear to include travel time from Debtor's counsel's office in Princeton to Newark. Assuming conservatively that such charges were 1 hour each way, that totals 6 hours for three trips at $155 per hour (which the Court finds is a reasonable rate). However, travel time should be billed at half the regular hourly rate. Thus, the $930 of charges for 6 hours of travel time at the $155 hourly rate will be divided by 2, resulting in a further deduction of $465.

    **4. Other Objections**.

The Court has considered the Debtor's other objections, which are overruled for various reasons. First, as to the performance of the same work by two attorneys, many of those entries occurred before October 26, 2016 and therefore have already been excluded. See Debtor's letter brief (page 7, line 16, items 1 through 8). The balance of this asserted double billing either does not appear to be billing for the same tasks or unreasonable to the Court and, therefore, will be allowed. Further, the specific time entries themselves appear reasonable (as the Debtor candidly acknowledges). Those charges are made even more reasonable when counsel's hourly rates of $190 and $155 are considered. Thus, the balance of the application is allowed.

**II.    CONCLUSION**

For the foregoing reasons, the Bank is allowed fees and expenses in the total amount of $7,694, which represents the $10,128 in fees and expenses incurred during the 180-day period, less $1,292 (for the Garn-St. Germain reply), $677 (for defense of the fee application) and $465 (for travel time). This amount represents 17.1 percent ($7,694 ÷ $45,000) of the principal amount due, which this Court finds is reasonable and was necessarily incurred in the circumstances. This

---

[4] The Court previously allowed four hours for this hearing at the full $155 per hour rate. However, those four hours included travel time and therefore two hours need to be reduced by half here.

case may now proceed to confirmation on the basis of this fee award.

    An Order implementing this Opinion is simultaneously being entered by the Court.

Dated:  May 12, 2017

/s/Vincent F. Papalia
VINCENT F. PAPALIA
United States Bankruptcy Judge